Judge J. Richard Creatura

*FILED ___ LODGED*
*___ RECEIVED*
MAR 18 2015
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| UNITED STATES OF AMERICA, | NO. MJ15-5043 |
|---|---|
| Plaintiff, | |
| v. | 18 U.S.C. §§ 2252 (a)(2) |
| FRED JACOB DILLIOTT, | |
| Defendant. | |

BEFORE, J. Richard Creatura, United States Magistrate Judge, U. S. Courthouse, Tacoma, Washington.

### COUNT 1

### (Distribution of Material Constituting or Containing Child Pornography)

Between on or about October 10, 2014 and on or about October 18, 2014, at Tacoma, within the Western District of Washington, and elsewhere, FRED JACOB DILLIOTT did knowingly distribute, and attempt to distribute, visual depictions the production of which involved the use of minors engaging in sexually explicit conduct, and the visual depictions were of such conduct, using any means and facility of interstate and foreign commerce and which images had been mailed and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer.

All in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1).

And the complainant states that this Complaint is based on the following information:

I, Special Agent Kyle McNeal, being duly sworn under oath, depose and say:

## INTRODUCTION

1. I have been employed as a Special Agent of the FBI since April 2011, and am currently assigned to the Seattle Division, Tacoma Resident Agency. While employed by the FBI, I have investigated federal criminal violations related to high technology or cyber crime, child exploitation, and child pornography. I have gained experience through training at the FBI Academy and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3. The statements contained in this Complaint are based in part on: information provided by FBI Special Agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by federal agents; independent investigation and analysis by FBI agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent (SA) with the FBI. This affidavit includes only those facts that I believe are necessary to establish probable cause and does not include all of the facts uncovered during the investigation.

## SUMMARY OF THE INVESTIGATION

### Description of "Website A"

4. "Website A," which is still operating, contains a centralized chat room where users, once logged in, have the ability to talk to one another, either via the public chat room or via direct messages to each other. The home page contains a login box and a list of users currently in the chat room.

5. In October of 2014, an FBI agent acting in an undercover capacity accessed "Website A" and observed the following: Upon logging in, a user is connected to a public chat room that has a constant flow of messages from many users. Most of the messages contain hyperlinks to images followed by comments from other users about the images. By clicking on the hyperlinks, a user may access the actual images. The undercover FBI agent did so and determined that almost all of the images depicted children and most of the images were child pornography or child erotica. One image that was linked to by a "Website A" user on October 29, 2014, depicted a prepubescent female bending over. The female was not wearing pants and her anus and vaginal area were visible. A message posted by another user shortly following this image being linked stated, "more cum on the pussy please." Another link posted on the same day by a "Website A" user was to an image of a prepubescent girl kneeling naked on a bed.

6. At the top of the chat room window, there is a box to type a message. Next to the box is a drop down menu where a user can choose to send the message to everyone who is currently logged into the site or select a user to message directly.

Finding and Accessing "Website A"

7. In August of 2014, a foreign law enforcement agency ("FLA 1") obtained a copy of the data and information from "Website A" as a part of an ongoing investigation. "FLA 1" provided a copy of that data and information to the FBI. The data and information associated with "Website A" contained approximately 30 minutes of logged messages from "Website A" as well as a member list. From reviewing the member list, it

1 was learned that a "Website A" user with a username "x"[1] was listed as one of the regular
2 administrators of "Website A." The data also showed that "Website A" had
3 approximately 350 members, 21 regular administrators, and 3 main administrators.

    8. In approximately September of 2014, officers of another foreign law enforcement agency ("FLA 2") arrested a subject, hereinafter referred to as S1, on charges involving the distribution of child pornography. As part of the search conducted at the time of S1's arrest, many digital devices were seized by "FLA 2." Upon review of the data on the devices, "FLA 2" located information regarding a user "x".

    9. In October 2014, a foreign law enforcement officer ("FLEO 1") with "FLA 1" advised the FBI that "FLEO 1" had been communicating through instant messaging in an undercover capacity with an individual who was utilizing the nickname "x." "FLEO 1" also stated that during many of these conversations with "x," "FLEO 1" was also communicating with the username "x" on "Website A." Because the instant messaging and "Website A" are separate services, it is possible to communicate over both of them at the same time – the same way that any website user could communicate with someone via a website chat program (i.e., Facebook chat) and an instant messaging program (i.e., Yahoo messenger). "FLEO 1" advised FBI that "FLEO 1" had many conversations with "x" and believed it was the same individual communicating on both instant messaging with nickname "x") and "Website A" (username "x"). "FLEO 1" believed this based on the simultaneous nature of the conversations "FLEO 1" had with "x" over instant messaging and "Website A" and because the conversations on both mediums covered the same topics.

    10. In October 2014, "FLEO 1" provided a list of links to images that "x" posted publicly on "Website A" from approximately September 5, 2014 to October 22, 2014. "FLEO 1" also provided the actual image files that "FLEO 1" downloaded upon

---

[1] The real user name is known to me but because Website A is currently operating, the user name of FRED JACOB DILLIOTT will be referred to as "x" for the purposes of this Complaint.

COMPLAINT/*United States v. Dilliott* - 4

accessing those links. The following are two examples of images posted by "x" on "Website A" and provided to the FBI by "FLEO 1."

  a. On October 10, 2014, the user "x" posted a link publicly on "Website A." The link was to Image: [xxx]1347983030353.jpg. I reviewed the image. The image depicted what appeared to be a nude female lying belly-side down on a mattress. A nude adult male appeared to be positioned in front of the female. The male's penis was inserted in the female's mouth. Based on the size of the male to the female and the shape and size of the hips, the female appeared to be under the age of sixteen years.

  b. On October 18, 2014, the user "x" posted a link publicly on "Website A." The link was to Image: [xxx]_075544Asd_aprilSuk343x. I reviewed the image. The image depicted what appeared to be a female sitting on a bed. The female was wearing what appeared to be a cat outfit with a cat nose mask. A penis was inserted into the female's mouth. The female appeared to be under the age of ten based on the size of the male's penis compared to the size of the female's face and body.

  11. In September of 2014, an administrative subpoena was issued to an electronic communications service provider who provided information related to user name "x" that an individual utilized IP address 50.181.232.36 four times between March 4, 2014 and March 27, 2014. A publicly available lookup determined that the IP address 50.181.232.36 was assigned to Comcast. In September of 2014, an administrative subpoena was issued to Comcast in regard to IP address 50.181.232.36 on 03/04/2014 15:14 GMT, 03/04/2014 21:36 GMT, 03/08/2014 08:13 GMT, and 03/26/2014 22:38 GMT. A review of the results obtained identified the following account holder:

  FRED DILLIOTT, 5055 39th Street NE Tacoma, WA 98422

  12. A Lexis-Nexis check was conducted on address 5055 39th St NE, Tacoma, Washington. The report showed FRED DILLIOTT as the owner of the property. No co-owner was listed in the report. The investigation revealed that FRED JACOB DILLIOTT was the sole resident of the residence at 5055 39th Street NE Tacoma, WA 98422.

13. Tacoma Police Report 073070419.1 contained information concerning FRED JACOB DILLIOTT. I reviewed the report and provided the following summary of its contents. In approximately November 2007, C.S., FRED JACOB DILLIOTT's former wife, contacted the Tacoma Police Department advising them that images of child pornography may be on her family's computer. C.S. advised that she was married to FRED DILLIOTT for fourteen years. C.S. related that they had no common children together, but that her youngest two children lived with them. C.S. did not know how old the computer was, but related that it had been in the computer family room for many years. C.S. was the main user of the computer. Sullivan advised that FRED JACOB DILLIOTT was very computer literate and that the computer had been through many upgrades.

14. C.S. related that when her daughter was a teenager, she made allegations about FRED JACOB DILLIOTT making inappropriate sexual comments. Her daughter told her that "A felony" was being committed in the home. Over the years, both of C.S.'s children said that they had seen pornographic images on the computer. It was not known if the images were of children or adults. In December 2006, C.S. took the computer to her divorce attorney. According to C.S., an Information Tech (IT) for the divorce attorney looked into the hard drive of the computer. C.S. said that her attorney was not specific as to what the hard drive contained, but was told that there were "10,000 illegal files" in the system. The computer was turned over to the Tacoma Police Department. It is unknown if the computer was searched. The computer has been destroyed.

15. On Tuesday March 17, 2015, I obtained a residential search warrant for the premises at 5055 39th Street NE, Tacoma, WA 98422, from Federal Magistrate Judge J. Richard Creatura.

16. On Wednesday March 18, 2015, I and other federal agents and local law enforcement executed the search warrant at the 5055 39th Street NE Tacoma, WA 98422 premises. FRED JACOB DILLIOTT was found standing in front of a computer in his home office. I observed from screenshots taken from his computer, which was observed

to be on, that he was logged into Website A and his user name 'x' was displayed at the top of the screen.

17.   Just prior to the entry to execute the search warrant, an FBI UC had logged onto Website A. The UC noticed that user "x" was also logged onto Website A. User "x", unsolicited, sent a public chat message to the FBI UC. The FBI UC replied to that message. FBI agents then entered the defendant's home to serve the search warrant. Subsequently, user "x" did not send any further messages to the FBI UC.

18.   FBI forensic examiner John Powers found a text file on the defendant's computer. Among other things, the file included user "x"'s login password for Website A, logs of private chat conversations between user "x" and other Website A users, and a username for another website known to the FBI to be used for the advertisement and distribution of child pornography.

## CONCLUSION

19.   Based on the above facts, I respectfully submit that there is probable cause to believe that FRED JACOB DILLIOTT did knowingly and unlawfully distribute child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and (b)(1).

Kyle McNeal, Complainant
Special Agent, FBI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 18 day of March, 2015.

J. RICHARD CREATURA
United States Magistrate Judge